**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 20-251-DLB**

**BESSIE ANN KING**                                                                 **PLAINTIFF**


**v.**                     **MEMORANDUM OPINION AND ORDER**


**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**                         **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \*

## I.    INTRODUCTION

This matter is before the Court on Plaintiff Bessie Ann King's Motion for Summary Judgment (Doc. # 14), filed pursuant to 42 U.S.C § 405(g), which allows Plaintiff to obtain judicial review of an administrative decision by the Social Security Administration. Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration,[1] has filed a Cross-Motion for Summary Judgment (Doc. # 18). The Court, having reviewed the administrative record and the parties' motions, and for the reasons stated herein, **affirms** the Commissioner's decision.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Bessie Ann King is a 56-year-old resident of Gray Hawk, Kentucky. (Tr. 187, 190). Ms. King filed an application for Supplemental Security Income ("SSI") benefits with the

---

[1]       During the pendency of this lawsuit, Dr. Kilolo Kijakazi replaced Andrew Saul as Acting Commissioner of the Social Security Administration.  Mr. Saul, as former Commissioner, was named in the original Complaint (Doc. # 1) of this lawsuit, but the Social Security Administration as an entity remains the official defendant, and so the Court has substituted the current Acting Commissioner's name in the case caption.

Social Security Administration ("SSA") on January 15, 2018.  (Tr. 187).  In her application, Ms. King alleged disability beginning in January 2016, and continuing through the date of application, based on an anxiety disorder and a learning disability.  (Tr. 188).  In March 2018, Ms. King's claim was initially denied (Tr. 97), and it was denied again on reconsideration in July 2018 (Tr. 104).   Ms. King requested a hearing before an Administrative Law Judge ("ALJ") shortly thereafter (Tr. 112), and a telephonic hearing was held before ALJ Boyce Crocker in April 2020.  (Tr. 29).  In his decision, ALJ Crocker noted that Ms. King had previously applied for benefits in 2014, and was determined to be not disabled, but that new evidence had been presented since then.   (Tr. 15). Nonetheless, the ALJ issued an unfavorable decision later in April 2020, finding that Ms. King was still not disabled within the Social Security Act.  (Tr. 12).  Ms. King then appealed to the SSA Appeals Council, who denied her appeal in October 2020.  (Tr. 1).  That denial precipitated the filing of this action.  (*See* Doc. # 1).

## III.     ANALYSIS

### A.     Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)).  "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)).   Courts are not to conduct a de novo

review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Rather, the Court must affirm the Commissioner's decision if it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side. *Id.*; *see also Listenbee v. Sec'y of Health & Hum. Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole." *Cutlip*, 25 F.3d at 286.

B. **The ALJ's Determination**

To determine disability, an ALJ conducts a five-step analysis. *Walters*, 127 F.3d at 529. Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *See id.* (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant for Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). At Step Five, the burden of proof "shifts to the Commissioner to identify

a significant number of jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, the ALJ determined at Step One that Ms. King had not engaged in substantial gainful activity since the date of her application in January 2018.  (Tr. 17).  At Step Two, the ALJ found that Ms. King's anxiety and learning disorder were severe impairments.  (Tr. 18).  The ALJ concluded at Step Three that Ms. King's severe impairments did not meet or medically equal the severity of one of the listed impairments in the Social Security Act, and so the analysis proceeded to the next step.  (Tr. 18-20).  Before completing the fourth step, the ALJ found that Ms. King had the residual functional capacity ("RFC") "to perform medium work . . . except that she must avoid concentrated exposure to pulmonary irritants," and that she is "able to perform simple, routine, and repetitive tasks performed in a work environment free of any fast-paced production requirements, and involving simple work-related decisions, with few, if any workplace changes," and that she "could have occasional interaction with coworkers, supervisors, and the general public."  (Tr. 20).  At Step Four, the ALJ noted that because Ms. King had no past relevant work, she would automatically not be able to perform her past relevant work with her RFC.  (Tr. 22).  Lastly, at Step Five, the ALJ concluded that given Ms. King's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she could perform.  (*Id.*).  Specifically, after consulting with a Vocational Expert ("VE"), the ALJ noted that Ms. King could perform "unskilled representative light occupations such as mail sorter."  (Tr. 23).  Because that job can be performed within Ms. King's RFC, the ALJ concluded that she was not disabled within the definitions of the Social Security Act.  (*Id.*).

On appeal to this Court, Ms. King argues that the ALJ's finding at Step Five is not supported by substantial evidence, as he failed to identify and resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT").  (Doc. # 14 at 6). Ms. King further posits that the VE's testimony was not reliable, and that the Medical-Vocational Guidelines direct a finding of disabled.  (*Id*. at 7).  After reviewing the filings made by Ms. King and the Commissioner, the Court finds that Ms. King's arguments do not warrant reversal, and the Commissioner's decision is thus affirmed for the foregoing reasons.

### C.   Discussion

As previously stated, "substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip*, 25 F.3d at 286.  The Court cannot weigh the evidence or re-litigate the case, but only examine the sufficiency of the evidence, even if the Court may have decided the case in a different manner.  *See Her*, 203 F.3d at 389-90.  If the ALJ's decision is supported by substantial evidence, the Court must affirm the decision.  *Cutlip*, 25 F.3d at 286.  The Court will evaluate each of Ms. King's arguments in turn under this standard.

#### 1.   *The ALJ's finding at Step Five is supported by substantial evidence.*

With respect to the ALJ's finding at Step Five, that Ms. King is capable of performing work as a mail sorter, Ms. King argues that the ALJ's decision is not supported by substantial evidence.  (Doc. # 14 at 1).  More specifically, Ms. King posits that the ALJ failed to identify and resolve conflicts between the VE's testimony and the Dictionary of

Occupational Titles, and that the VE's testimony was not reliable.  (*Id.* at 5-7). Unfortunately for Ms. King, both of her arguments are unavailing.

Before proceeding to Step Five, the ALJ concluded that Ms. King's RFC would allow her to "perform simple, routine, and repetitive tasks . . . involving simple work-related decisions, with few, if any workplace changes," in addition to other limitations.  (Tr. 20). During the hearing, the VE testified that mail sorter was the only job in the DOT that would match Ms. King's RFC when posed as a hypothetical by the ALJ.  (Tr. 47-48).  In the DOT listing for mail sorter, the job is assigned a Specific Vocational Preparation ("SVP") number of 2, which indicates that a worker could learn how to complete the job in "anything beyond short demonstration up to and including one month."[2]  In addition to the SVP, the mail sorter job is also assigned a Reasoning Level of 3, which requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations."[3]

Ms. King argues that these listings do not align with the mental components of her RFC, which restrict her only to "simple work-related decisions[.]"  (Doc. # 14 at 7). Instead, she writes that her mental RFC "is more consistent with a reasoning level of 1 ("R1"), which requires the ability to understand and carry out simple one- or two-step instructions with occasional or no variables in job situations."  (*Id.*).  Because of the

---

[2]      *Dictionary of Occupational Titles*, Appendix C, UNITED STATES DEPARTMENT OF LABOR, (4th. ed, 1991), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC, accessed August 1, 2022.

[3]      *Id.*

posited inconsistency, Ms. King further alleges that there is a "clear and significant conflict between the VE's testimony and the DOT which was not addressed by the ALJ." (*Id.*).

Ms. King is correct that the law "imposes on ALJs an affirmative duty to ask VEs if the evidence they provide 'conflicts with the information provided in the DOT' and to resolve any 'apparent conflicts.'" *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 435 (6th Cir. 2016) (quoting SSR 00-4p, 2000 WL 1989704 (Dec. 4, 2000)). In the Sixth Circuit, "an ALJ satisfies her duty to inquire if she asks the VE whether the VE's testimony is consistent with the DOT and receives an affirmative response." *Id.* (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)).

Here, in the ALJ's opinion, he wrote that he had "determined that the vocational expert's testimony [was] consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 23). Furthermore, the transcript of the telephonic hearing shows that the ALJ asked the following question to the VE: "Has your testimony, Ms. Hale, been consistent with the Dictionary of Occupational Titles?" (Tr. 49). Ms. Hale, the VE, responded, "Yes, your honor." (*Id.*). Thus, the ALJ in Ms. King's case satisfied his duty under Sixth Circuit case law to inquire about and resolve any conflicts between the testimony.

Second, Ms. King argues that the VE's testimony was facially unreliable because the DOT's mail sorter listing is obsolete, and "commonsense dictates that when [the DOT's] descriptions appear obsolete, a more recent source of information should be consulted." (Doc. # 14 at 8). In support of this argument, Ms. King points out that the DOT has been replaced by O*NET (a newer digital database) within the Department of

Labor, and the updated O*NET listing for mail sorter lists duties that would be beyond her RFC.  (*Id.* at 9).

While Ms. King has provided evidence that at least one other district court has identified discrepancies between the DOT and O*NET as evidence of the mail order listing being obsolete, this Court notes that the SSA's governing regulations have not formally adopted O*NET.  *See* 20 C.F.R. § 404.1566(d) (listing acceptable sources that the ALJ may take administrative notice of for accessing job data).  In *Cunningham v. Astrue*, the only controlling case cited by Ms. King in support of this argument, the Sixth Circuit noted that "when such descriptions appear obsolete, a more recent source of information should be consulted."  360 F. Appx 606, 615 (6th Cir. 2010).  However, in *Cunningham*, the two jobs being considered, document preparer and security camera monitor, were listed in the DOT but were *completely omitted* from O*NET, which the court saw as a "common sense" indicator of the DOT's unreliability, thus translating to a lack of substantial evidence.  *Id.* at 615-16.  O*NET's "Crosswalk" function links the DOT mail sorter listing to its own "Mail Clerks and Mail Machine Operators, Except Postal Service" listing.  *See Hamilton v. Berryhill*, No. 4:17-CV-53-HBB, 2018 WL 1324163, at *5 (W.D. Ky. Mar. 14, 2018) (identifying parallel mail sorter listings via "Crosswalk" function inside O*NET).  Thus, because the mail sorter listing is included in O*NET, no "commonsense" evidence of obsolescence exists as contemplated by *Cunningham*.  360 F. App'x at 615.

In spite of the shortcomings in her arguments, Ms. King has presented evidence that the ALJ's decision at Step Five was a close call.  Nonetheless, as previously stated, this Court cannot re-weigh the evidence or re-litigate the case, but only examine the sufficiency of the evidence, even if the Court may have decided the case in a different

manner.   *See Her*, 203 F.3d at 389-90.  Because the ALJ followed SSA regulations and controlling case law interpreting those regulations, the Court finds that his decision at Step Five is supported by substantial evidence and must be affirmed.

### 2. The ALJ's reading of the Medical-Vocational Guidelines is supported by substantial evidence.

Lastly, Ms. King briefly argues that the ALJ incorrectly applied the Medical-Vocational Guidelines at Step Five.  (Doc. # 14 at 9).  The Medical-Vocational Guidelines are regulations which provide for "cases which cannot be evaluated on medical considerations alone."  20 C.F.R. 404(P), app. 2 § 200.00.  The Guidelines also provide for consideration of "vocational factors . . . in combination with the individual's residual functional capacity[,]" and when "the findings of fact . . . coincide with all of the criteria of a particular [Guideline], the rule directs a conclusion as to whether the individual is or is not disabled."  *Id.*  In short, the Guidelines direct the ALJ to a certain conclusion when a claimant's "vocational factors" and RFC are certain.  *See id.*

Ms. King has argued that the Guidelines direct the ALJ to find her disabled.  In support of that argument, she writes that she "is clearly precluded from carrying out the mental demands of a mail sorter [and] given the Commissioner's failure to meet his burden of proving that jobs exist at the medium or light level of exertion, [she] is relegated to sedentary work only."  (Doc. # 14 at 10).  From there, Ms. King argues that the Medical-Vocational Guidelines dictate a finding of "disabled" for people who can only perform sedentary work.  (*Id.*).  While her reading of the Guidelines is correct, the root of Ms. King's argument, that she is "relegated to sedentary work only," is prefaced either on her RFC being incorrect, or in the mail sorter job being invalid, because the RFC assigned to her by the ALJ would not direct a finding of disabled under the Guidelines.  *See* 20 C.F.R.

404(P), app. 2.  She has proven neither of those arguments, but the Court will nonetheless address them *arguendo*.

As previously stated, the ALJ determined that Ms. King had the RFC "to perform medium work" as defined by the governing regulations.  (Tr. 20).  In making that determination, the ALJ cited medical opinions and prior administrative findings from Ms. King's previous application for benefits.  (*E.g.*, Tr. 20-23).  While Ms. King has not directly argued that the determined RFC is incorrect, the Court sees that it is clearly supported by substantial evidence and must be upheld.  With respect to the mail sorter position, the Court has already stated that the ALJ's reasoning at Step Five is supported by substantial evidence, as the ALJ appropriately questioned the VE, and the mail sorter position is not facially obsolete.  Thus, Ms. King's argument that she is "relegated to sedentary work only" is unavailing, and thus, the Medical-Vocational Guidelines which relate to people who can only perform sedentary work are not applicable to her.

## IV.    CONCLUSION

In close, the Court again notes that in reviewing the decision of an ALJ, the Court cannot re-litigate a case, and it cannot re-weigh the evidence.  *Her*, 203 F.3d at 389-90.  Even when the Court may have decided a case differently, the Court must affirm the ALJ's decision if it is supported by substantial evidence.  *Cutlip*, 25 F.3d at 286.  In this case, for the reasons stated herein, the ALJ's decision is supported by an ample amount of substantial evidence, and thus it will be affirmed.

Accordingly, **IT IS ORDERED** that:

(1)    Ms. King's Motion for Summary Judgment (Doc. # 14) is **DENIED**;

(2)     The Commissioner's Motion for Summary Judgment (Doc. # 18) is **GRANTED**;

(3)     This matter is **DISMISSED** and **STRICKEN** from the Court's active docket; and;

(4)     A separate Judgment shall be entered herewith.

This 1st day of August, 2022.



Signed By:

*David L. Bunning*

**United States District Judge**

K:\DATA\SocialSecurity\MOOs\London\20-251 King MOO.docx